# AMERICAN HOSPITAL ASSOCIATION *v.* NATIONAL LABOR RELATIONS BOARD ET AL.

No. 90–97.   Argued February 25, 1991—Decided April 23, 1991

Stevens, J., delivered the opinion for a unanimous Court.

*James D. Holzhauer* argued the cause for petitioner. With him on the briefs were *Kenneth S. Geller, Arthur R. Miller,* and *Rhonda A. Rhodes.*

*Deputy Solicitor General Shapiro* argued the cause for respondents. With him on the brief for respondent National Labor Relations Board were *Solicitor General Starr, Stephen L. Nightingale, Robert E. Allen, Norton J. Come,* and *Linda Sher. Woody N. Peterson, David Silberman, Laurence Gold, Helen Morgan, Richard Griffin, Michael Fanning, Miriam Gafni, James Grady, Jonathan Hiatt, Richard Kirschner,*

*Bruce Miller, Patrick Scanlon,* and *George Murphy* filed a brief for respondents American Nurses Association et al.*

JUSTICE STEVENS delivered the opinion of the Court.

For the first time since the National Labor Relations Board (Board or NLRB) was established in 1935, the Board has promulgated a substantive rule defining the employee units appropriate for collective bargaining in a particular line of commerce. The rule is applicable to acute care hospitals and provides, with three exceptions, that eight, and only eight, units shall be appropriate in any such hospital. The three exceptions are for cases that present extraordinary circumstances, cases in which nonconforming units already exist, and cases in which labor organizations seek to combine two or more of the eight specified units. The extraordinary circumstances exception applies automatically to hospitals in which the eight-unit rule will produce a unit of five or fewer employees. See 29 CFR § 103.30 (1990).

Petitioner, American Hospital Association, brought this action challenging the facial validity of the rule on three grounds: First, petitioner argues that § 9(b) of the National Labor Relations Act (NLRA or Act) requires the Board to make a separate bargaining unit determination "in each case" and therefore prohibits the Board from using general rules to define bargaining units; second, petitioner contends that the

---

*Briefs of *amici curiae* urging reversal were filed for the Fairfax Hospital System, the Maryland Hospital Association, Inc., and the Virginia Hospital Association by *John G. Kruchko* and *Paul M. Lusky;* for the California Association of Hospitals and Health Systems et al. by *Robert M. Stone* and *Dana D. Howells;* for the Greater Cincinnati Hospital Council by *Lawrence J. Barty* and *Frank H. Stewart;* for the Hospital Association of Pennsylvania et al. by *John E. Lyncheski* and *Michael J. Reilly;* for the Society for Human Resource Management by *Glen D. Nager;* for the Missouri Hospital Association by *E. J. Holland, Jr.;* for St. Francis Hospital, Inc., of Memphis by *Jeff Weintraub;* and for William Beaumont Hospital et al. by *Theodore R. Opperwall.*

*Lawrence Rosenzweig* filed a brief for the Union of American Physicians and Dentists as *amicus curiae* urging affirmance.

rule that the Board has formulated violates a congressional admonition to the Board to avoid the undue proliferation of bargaining units in the health care industry; and, finally, petitioner maintains that the rule is arbitrary and capricious.

The United States District Court for the Northern District of Illinois agreed with petitioner's second argument and enjoined enforcement of the rule. 718 F. Supp. 704 (1989). The Court of Appeals found no merit in any of the three arguments and reversed. 899 F. 2d 651 (CA7 1990). Because of the importance of the case, we granted certiorari, 498 U. S. 894 (1990). We now affirm.

## I

Petitioner's first argument is a general challenge to the Board's rulemaking authority in connection with bargaining unit determinations based on the terms of the NLRA, 49 Stat. 449, 29 U. S. C. § 151 *et seq.*, as originally enacted in 1935. In § 1 of the NLRA Congress made the legislative finding that the "inequality of bargaining power" between unorganized employees and corporate employers had adversely affected commerce and declared it to be the policy of the United States to mitigate or eliminate those adverse effects "by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U. S. C. § 151. The central purpose of the Act was to protect and facilitate employees' opportunity to organize unions to represent them in collective-bargaining negotiations.

Sections 3, 4, and 5 of the Act created the Board and generally described its powers. §§ 153–155. Section 6 granted the Board the "authority from time to time to make, amend, and rescind . . . such rules and regulations as may be necessary to carry out the provisions" of the Act. § 156. This

610

grant was unquestionably sufficient to authorize the rule at issue in this case unless limited by some other provision in the Act.

Petitioner argues that § 9(b) provides such a limitation because this section requires the Board to determine the appropriate bargaining unit "in each case." § 159(b). We are not persuaded. Petitioner would have us put more weight on these three words than they can reasonably carry.

Section 9(a) of the Act provides that the representative "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes" shall be the exclusive bargaining representative for all the employees in that unit. § 159(a). This section, read in light of the policy of the Act, implies that the initiative in selecting an appropriate unit resides with the employees. Moreover, the language suggests that employees may seek to organize "a unit" that is "appropriate"—not necessarily *the* single most appropriate unit. See, *e. g.*, *Trustees of Masonic Hall and Asylum Fund* v. *NLRB*, 699 F. 2d 626, 634 (CA2 1983); *State Farm Mutual Automobile Ins. Co.* v. *NLRB*, 411 F. 2d 356, 358 (CA7) (en banc), cert. denied, 396 U. S. 832 (1969); *Friendly Ice Cream Corp.* v. *NLRB*, 705 F. 2d 570, 574 (CA1 1983); *Local 627, Int'l Union of Operating Engineers* v. *NLRB*, 194 U. S. App. D. C. 37, 41, 595 F. 2d 844, 848 (1979); *NLRB* v. *Western & Southern Life Ins. Co.*, 391 F. 2d 119, 123 (CA3), cert. denied, 393 U. S. 978 (1968). Thus, one union might seek to represent all of the employees in a particular plant, those in a particular craft, or perhaps just a portion thereof.

Given the obvious potential for disagreement concerning the appropriateness of the unit selected by the union seeking recognition by the employer—disagreements that might involve rival unions claiming jurisdiction over contested segments of the work force as well as disagreements between management and labor—§ 9(b) authorizes the Board to decide whether the designated unit is appropriate. See Hearings

on S. 1958 before the Senate Committee on Education and Labor, p. 82 (1935) (hereinafter Hearings), 1 Legislative History of the National Labor Relations Act 1935, p. 1458 (hereinafter Legislative History) (testimony of Francis Biddle, Chairman of Board); H. R. Rep. No. 972, 74th Cong., 1st Sess., 20 (1935), 2 Legislative History 2976. Section 9(b) provides:

> "The Board shall decide *in each case* whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." (Emphasis added.)

Petitioner reads the emphasized phrase as a limitation on the Board's rulemaking powers. Although the contours of the restriction that petitioner ascribes to the phrase are murky, petitioner's reading of the language would prevent the Board from imposing any industry-wide rule delineating the appropriate bargaining units. We believe petitioner's reading is inconsistent with the natural meaning of the language read in the context of the statute as a whole.

The more natural reading of these three words is simply to indicate that whenever there is a disagreement about the appropriateness of a unit, the Board shall resolve the dispute. Under this reading, the words "in each case" are synonymous with "whenever necessary" or "in any case in which there is a dispute." Congress chose not to enact a general rule that would require plant unions, craft unions, or industry-wide unions for every employer in every line of commerce, but also chose not to leave the decision up to employees or employers alone. Instead, the decision "in each case" in which a dispute arises is to be made by the Board.

In resolving such a dispute, the Board's decision is presumably to be guided not simply by the basic policy of the Act but also by the rules that the Board develops to circumscribe and

to guide its discretion either in the process of case-by-case adjudication or by the exercise of its rulemaking authority. The requirement that the Board exercise its discretion in every disputed case cannot fairly or logically be read to command the Board to exercise standardless discretion in each case. As a noted scholar on administrative law has observed: "[T]he mandate to decide 'in each case' does not prevent the Board from supplanting the original discretionary chaos with some degree of order, and the principal instruments for regularizing the system of deciding 'in each case' are classifications, rules, principles, and precedents. Sensible men could not refuse to use such instruments and a sensible Congress would not expect them to." K. Davis, Administrative Law Text, § 6.04, p. 145 (3d ed. 1972).

This reading of the "in each case" requirement comports with our past interpretations of similar provisions in other regulatory statutes. See *United States* v. *Storer Broadcasting Co.*, 351 U. S. 192, 205 (1956); *FPC* v. *Texaco, Inc.*, 377 U. S. 33, 41–44 (1964); *Heckler* v. *Campbell*, 461 U. S. 458, 467 (1983). These decisions confirm that, even if a statutory scheme requires individualized determinations, the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.

Even petitioner acknowledges that "the Board could adopt rules establishing general principles to guide the required case-by-case bargaining unit determinations." Brief for Petitioner 19. Petitioner further acknowledges that the Board has created many such rules in the half-century during which it has adjudicated bargaining unit disputes. Reply Brief for Petitioner 8–11. Petitioner contends, however, that a rule delineating the appropriate bargaining unit for an entire industry is qualitatively different from these prior rules, which at most established rebuttable presumptions that certain units would be considered appropriate in certain circumstances.

We simply cannot find in the three words "in each case" any basis for the fine distinction that petitioner would have us draw. Contrary to petitioner's contention, the Board's rule is not an irrebuttable presumption; instead, it contains an exception for "extraordinary circumstances." Even if the rule did establish an irrebuttable presumption, it would not differ significantly from the prior rules adopted by the Board. As with its prior rules, the Board must still apply the rule "in each case." For example, the Board must decide in each case, among a host of other issues, whether a given facility is properly classified as an acute care hospital and whether particular employees are properly placed in particular units.

Our understanding that the ordinary meaning of the statutory language cannot support petitioner's construction is reinforced by the structure and the policy of the NLRA. As a matter of statutory drafting, if Congress had intended to curtail in a particular area the broad rulemaking authority granted in § 6, we would have expected it to do so in language expressly describing an exception from that section or at least referring specifically to the section. And, in regard to the Act's underlying policy, the goal of facilitating the organization and recognition of unions is certainly served by rules that define in advance the portions of the work force in which organizing efforts may properly be conducted.

The sparse legislative history of the provision affords petitioner no assistance. That history reveals that the phrase was one of a group of "small amendments" suggested by the Secretary of Labor "for the sake of clarity." See Senate Committee on Education and Labor, Memorandum Comparing S. 2926 and S. 1958, 74th Cong., 1st Sess., 9 (Comm. Print 1935), 1 Legislative History 1332, Hearings, 1442, 1445; Hearings on H. R. 6288 before the House Committee on Labor, 74th Cong., 1st Sess., 283–284 (1935), 2 Legislative History 2757–2758. If this amendment had been intended to place the important limitation on the scope of the Board's rulemaking powers that petitioner suggests, we would ex-

pect to find some expression of that intent in the legislative history. Cf. *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 600–601 (1980) (REHNQUIST, J., dissenting).

The only other relevant legislative history adds nothing to the meaning conveyed by the text that was enacted. Petitioner relies on a comment in the House Committee on Labor Report that the matter of the appropriate unit "is obviously one for determination in each individual case, and the only possible workable arrangement is to authorize the impartial government agency, the Board, to make that determination." H. R. Rep. No. 972, 74th Cong., 1st Sess., 20 (1935), 2 Legislative History 2976. This comment, however, simply restates our reading of the statute as requiring that the Board decide the appropriate unit in every case in which there is a dispute. The Report nowhere suggests that the Board cannot adopt generally applicable rules to guide its "determination in each individual case."

In sum, we believe that the meaning of § 9(b)'s mandate that the Board decide the appropriate bargaining unit "in each case" is clear and contrary to the meaning advanced by petitioner. Even if we could find any ambiguity in § 9(b) after employing the traditional tools of statutory construction, we would still defer to the Board's reasonable interpretation of the statutory text. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984). We thus conclude that § 9(b) does not limit the Board's rulemaking authority under § 6.

## II

Consideration of petitioner's second argument requires a brief historical review of the application of federal labor law to acute care hospitals. Hospitals were "employers" under the terms of the NLRA as enacted in 1935, but in 1947 Congress excepted not-for-profit hospitals from the coverage of the Act. See 29 U. S. C. § 152(2) (1970 ed.) (repealed, 1974). In 1960, the Board decided that proprietary hospitals

should also be excepted, see *Flatbush General Hospital*, 126 N. L. R. B. 144, 145, but this position was reversed in 1967, see *Butte Medical Properties*, 168 N. L. R. B. 266, 268.

In 1973, Congress addressed the issue and considered bills that would have extended the Act's coverage to all private health care institutions, including not-for-profit hospitals. The proposed legislation was highly controversial, largely because of the concern that labor unrest in the health care industry might be especially harmful to the public. Moreover, the fact that so many specialists are employed in the industry created the potential for a large number of bargaining units, in each of which separate union representation might multiply management's burden in negotiation and might also increase the risk of strikes. Motivated by these concerns, Senator Taft introduced a bill that would have repealed the exemption for hospitals, but also would have placed a limit of five on the number of bargaining units in nonprofit health care institutions. S. 2292, 93d Cong., 1st Sess. (1973). Senator Taft's bill did not pass.

In the second session of the same Congress, however, the National Labor Relations Act Amendments of 1974 were enacted. See 88 Stat. 395. These amendments subjected all acute care hospitals to the coverage of the Act but made no change in the Board's authority to determine the appropriate bargaining unit in each case. See *ibid.* Both the House and the Senate Committee Reports on the legislation contained this statement:

> "EFFECT ON EXISTING LAW
>
> "Bargaining Units
>
> "Due consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry. In this connection, the Committee notes with approval the recent Board decisions in *Four Seasons Nursing Center*, 208 NLRB No. 50, 85 LRRM 1093 (1974), and *Woodland Park Hospital*, 205 NLRB No.

144, 84 LRRM 1075 (1973), as well as the trend toward broader units enunciated in *Extendicare of West Virginia*, 203 NLRB No. 170, 83 LRRM 1242 (1973).*

"*By our reference to *Extendicare,* we do not necessarily approve all of the holdings of that decision."

See S. Rep. No. 93–766, p. 5 (1974); H. R. Rep. No. 93–1051, pp. 6–7 (1974).

Petitioner does not—and obviously could not—contend that this statement in the Committee Reports has the force of law, for the Constitution is quite explicit about the procedure that Congress must follow in legislating. Nor, in view of the fact that Congress refused to enact the Taft bill that would have placed a limit of five on the number of hospital bargaining units, does petitioner argue that eight units necessarily constitute proliferation. Rather, petitioner's primary argument is that the admonition, when coupled with the rejection of a general rule imposing a five-unit limit, evinces Congress' intent to emphasize the importance of the "in each case" requirement in § 9(b).

We find this argument no more persuasive than petitioner's reliance on § 9(b) itself. Assuming that the admonition was designed to emphasize the requirement that the Board determine the appropriate bargaining unit in each case, we have already explained that the Board's rule does not contravene this mandate. See Part I, *supra.*

Petitioner also suggests that the admonition "is an authoritative statement of what Congress intended when it extended the Act's coverage to include nonproprietary hospitals." Brief for Petitioner 30. Even if we accepted this suggestion, we read the admonition as an expression by the Committees of their desire that the Board give "due consideration" to the special problems that "proliferation" might create in acute care hospitals. Examining the record of the Board's rulemaking proceeding, we find that it gave exten-

sive consideration to this very issue. See App. 20, 78–84, 114, 122, 131, 140, 158–159, 191–194, 246–254.*

In any event, we think that the admonition in the Committee Reports is best understood as a form of notice to the Board that if it did not give appropriate consideration to the problem of proliferation in this industry, Congress might respond with a legislative remedy. So read, the remedy for noncompliance with the admonition is in the hands of the body that issued it. Cf. *Public Employees Retirement System of Ohio* v. *Betts*, 492 U. S. 158, 168 (1989) (legislative history that cannot be tied to the enactment of specific statutory language ordinarily carries little weight in judicial interpretation of the statute). If Congress believes that the Board has not given "due consideration" to the issue, Congress may fashion an appropriate response.

### III

Petitioner's final argument is that the rule is arbitrary and capricious because "it ignores critical differences among the more than 4,000 acute-care hospitals in the United States, including differences in size, location, operations, and workforce organization." Brief for Petitioner 39. Petitioner supports this argument by noting that in at least one earlier unit determination, the Board had commented that the diverse character of the health care industry precluded generalizations about the appropriateness of any particular bargaining unit. See *St. Francis Hospital*, 271 N. L. R. B.

---

*We further note that the Board's rule is fully consistent with the two NLRB case holdings expressly approved by the admonition. In one of those cases, the Board refused to approve a bargaining unit composed of only x-ray technicians and instead ruled that all technical workers should be grouped together. See *Woodland Park Hospital, Inc.*, 205 N. L. R. B. 888–889 (1973). In the other case, the Board refused to permit a unit of only two employees. See *Four Seasons Nursing Center of Joliet*, 208 N. L. R. B. 403 (1974). The current rule authorizes a single unit for all technical workers and prohibits units of fewer than five employees. See 29 CFR § 103.30(a) (1990).

948, 953, n. 39 (1984), remanded *sub nom. Electrical Workers* v. *NLRB*, 259 U. S. App. D. C. 168, 814 F. 2d 697 (1987).

The Board responds to this argument by relying on the extensive record developed during the rulemaking proceedings, as well as its experience in the adjudication of health care cases during the 13-year period between the enactment of the health care amendments and its notice of proposed rulemaking. Based on that experience, the Board formed the "considered judgment" that "acute care hospitals do not differ in substantial, significant ways relating to the appropriateness of units." App. 188–189. Moreover, the Board argues, the exception for "extraordinary circumstances" is adequate to take care of the unusual case in which a particular application of the rule might be arbitrary.

We do not believe that the challenged rule is inconsistent with the Board's earlier comment on diversity in the health care industry. The comment related to the entire industry whereas the rule does not apply to many facilities, such as nursing homes, blood banks, and outpatient clinics. See *St. Francis*, 271 N. L. R. B., at 953, n. 39. Moreover, the Board's earlier discussion "anticipate[d] that after records have been developed and a number of cases decided from these records, certain recurring factual patterns will emerge and illustrate which units are typically appropriate." See *ibid.*

Given the extensive notice and comment rulemaking conducted by the Board, its careful analysis of the comments that it received, and its well-reasoned justification for the new rule, we would not be troubled even if there were inconsistencies between the current rule and prior NLRB pronouncements. The statutory authorization "from time to time to make, amend, and rescind" rules and regulations expressly contemplates the possibility that the Board will reshape its policies on the basis of more information and experience in the administration of the Act. See 29 U. S. C. § 156. The question whether the Board has changed its view about

certain issues or certain industries does not undermine the validity of a rule that is based on substantial evidence and supported by a "reasoned analysis." See *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 42, 57 (1983).

The Board's conclusion that, absent extraordinary circumstances, "acute care hospitals do not differ in substantial, significant ways relating to the appropriateness of units," App. 189, was based on a "reasoned analysis" of an extensive record. See 463 U. S., at 57. The Board explained that diversity among hospitals had not previously affected the results of bargaining unit determinations and that diversification did not make rulemaking inappropriate. See App. 55–59. The Board justified its selection of the individual bargaining units by detailing the factors that supported generalizations as to the appropriateness of those units. See, *e. g., id.*, at 93–94, 97, 98, 101, 118–120, 123–129, 133–140.

The fact that petitioner can point to a hypothetical case in which the rule might lead to an arbitrary result does not render the rule "arbitrary or capricious." This case is a challenge to the validity of the entire rule in all its applications. We consider it likely that presented with the case of an acute care hospital to which its application would be arbitrary, the Board would conclude that "extraordinary circumstances" justified a departure from the rule. See 29 CFR §§ 103.30(a), (b) (1990). Even assuming, however, that the Board might decline to do so, we cannot conclude the the entire rule is invalid on its face. See *Illinois Commerce Commission* v. *Interstate Commerce Commission*, 249 U. S. App. D. C. 389, 393–394, 776 F. 2d 355, 359–360 (1985) (Scalia, J.); *Aberdeen & Rockfish R. Co.* v. *United States*, 682 F. 2d 1092, 1105 (CA5 1982); cf. *FDIC* v. *Mallen*, 486 U. S. 230, 247 (1988) ("A statute such as this is not to be held unconstitutional simply because it may be applied in an arbitrary or unfair way in some hypothetical case not before the Court").

In this opinion, we have deliberately avoided any extended comment on the wisdom of the rule, the propriety of the specific unit determinations, or the importance of avoiding work stoppages in acute care hospitals. We have pretermitted such discussion not because these matters are unimportant but because they primarily concern the Board's exercise of its authority rather than the limited scope of our review of the legal arguments presented by petitioner. Because we find no merit in any of these legal arguments, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*