SAROKIN, Circuit Judge,
dissenting.
I agree with the majority that there is substantial evidence in the record to support the NLRB’s conclusion that the four telecommunications workers are appropriately considered part of the skilled maintenance workers bargaining unit. I conclude, however, that the NLRB abused its discretion by applying the community of interest analysis to determine whether the Montefiore workers should be included in the skilled maintenance workers bargaining unit.
It is my view that under the Board’s own Final Rule, the Board should no longer apply the community of interest analysis in determining appropriate bargaining units in the context of acute care hospitals. Rather, in determining whether an existing bargaining unit in an acute care hospital should be expanded to include similar workers from a hospital with which it has merged, I think the Board should apply the single facility presumption — a similar, but nonetheless distinct, standard — and I would remand this matter to the Board for purposes of applying the standard. Accordingly, I respectfully dissent.
I.
In analyzing this case, I rely heavily upon the Board’s motivation for promulgating the Final Rule, as well as the process it followed in doing so. Accordingly, I will first present a brief history of the Final Rule.
A.
In 1974, Congress passed the Health-Care Amendment to the NLRA, making non-profit hospitals — which had been exempt from the NLRA — subject to it. St. Margaret Memorial Hosp. v. NLRB, 991 F.2d 1146, 1148 (3d Cir.1993) (citing Pub.L. No. 93-360, 88 Stat. 395 (1974) (codified at 29 U.S.C. §§ 152(14), 158(d) and (g))). As a result of this change, many disputes arose regarding the appropriate bargaining units in the health care industry, and the Board and the courts of appeals struggled to resolve these disputes, often disagreeing on the appropriate test to apply to make appropriate bargaining unit determinations. See, e.g., Mercy Hospitals of Sacramento, 217 NLRB 765, 767 (1975) enf. denied on other grounds, 589 F.2d 968 (9th Cir.1978), cert. denied, 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458 (1979) (relying on history of separate representation and community of interest to conclude registered nurses are entitled to separate bargaining unit); NLRB v. St. Francis Hospital of Lynwood, 601 F.2d 404 (9th Cir.1979) (favoring a “disparity of interests” standard over a “community of interests” one); IBEW, Local Union No. 474 (St. Francis Hospital) v. NLRB, 814 F.2d 697 (D.C.Cir.1987) (disapproving of the “disparity of interests” standard); see also Collective Bargaining Units in the Healthcare Industry, 52 Fed.Reg. 25,142 (July 2, 1987) (notice of proposed rulemaking) (collecting cases and explaining changes in jurisprudence).
*1311 By the late 1980s, the Board had become very concerned with the lack of uniformity in the jurisprudence of the adjudicative arm of the Board itself, as well as in the courts of appeals, regarding the standard to be applied when determining appropriate bargaining units in the health care industry: “[Tjhere is no one, generally phrased test for determining appropriate units in this industry that has met with success in the various circuit courts of appeal, and, unfortunately, parties have no clear guidance as to what units the Board, and courts will ultimately find appropriate.” 52 Fed.Reg. 25,142 (notice of proposed rulemaking).
In an effort to remedy this problem, the Board engaged in notice and comment rule-making in the late 1980s, with the goal of creating a Rule that would limit the need for “lengthy, costly litigation over the appropriate bargaining unit or units” in the health care industry. Collective-Bargaining Units in the Healthcare Industry, 53 Fed.Reg. 33901 (Sept. 1, 1988) (second notice of proposed rulemaking). The Board proceeded with the expectation that the process of notice and comment would allow it the opportunity to produce empirical evidence that it could then use to make appropriate unit determinations for acute care hospitals generally, “while not creating such undesirable results as excessive proliferation, interruption in the delivery of health care services, jurisdictional disputes, wage whipsawing, and the like.” Id. In order to accomplish this task, the Board relied on past cases and information it obtained in the process of notice and comment and then applied an analysis very similar to a community of interest analysis to identify a “finite number of congenial groups displaying both a community of interests within themselves and a disparity of interests from other groups.” 52 Fed.Reg. 25,146 (notice of proposed rulemaking).
Among the factors to be considered [when determining the appropriate bargaining units for acute care hospitals] will be uniqueness of function; training, education and licensing; wages hours and working conditions; supervision; employee interaction; and factors relating to collective bargaining, such as bargaining history, matters of special concern, etc.
53 Fed.Reg. at 33905-06 (second notice of proposed rulemaking).[1]
Following two notice and comment periods, the Board ultimately promulgated the Final Rule, 29 C.F.R. § 103.30, defining eight appropriate bargaining units for acute care hospitals, see Majority Opinion at 1303-1304, and declaring that “[e]xcept in extraordinary circumstances and in circumstances in which there are existing non-conforming units, the [eight units] shall be appropriate units, and the only appropriate units, for petitions filed pursuant to section 9(c)(l)(A)(i) or 9(c)(1)(B) of the National Labor Relations Act....” Id. (emphasis added).
Under the Final Rule, then, acute care hospitals are allowed eight, and only eight, bargaining units. See American Hospital Association v. NLRB, 499 U.S. 606, 608, 111 S.Ct. 1539, 1541, 113 L.Ed.2d 675 (1991) (upholding the validity of the Final Rule). Further, the Final Rule necessarily permits only one bargaining unit of skilled maintenance workers at an acute care hospital unless nonconforming units already exist or there are extraordinary circumstances.[2] In the case of *1312 existing non-conforming units, however, where the Union itself seeks to open up the unit to residual skilled maintenance workers, it is required that “all unrepresented employees residual to the existing unit or units be included in an election to represent them.” St. John’s Hospital, 307 NLRB 767, 768, 1992 WL 122630 (1992) (emphasis added).
B.
I think that the Board’s motivation for promulgating the Final Rule, as well as the process it followed in doing so, demonstrates that the NLRB sought to end the case by case application of the community of interest analysis when determining the appropriate bargaining units in acute care hospitals. The Board engaged in years of notice and comment, collecting empirical evidence to develop appropriate categories of workers in acute care hospitals in order to avoid the difficulties experienced by the Board and the courts in determining the appropriate bargaining units for hospitals. It is my view that, with the promulgation of the Final Rule, the Board, and necessarily any reviewing courts, were put out of the business of applying the community of interest test to determine appropriate bargaining units in acute care hospitals.[3]
I therefore conclude that the Board abused its discretion when it applied the community of interest test in the instant matter to determine whether the Montefiore skilled maintenance workers should be included in the same bargaining unit with the Presbyterian skilled maintenance workers. That the community of interest test was applied here to determine whether workers in similar job categories but different locations should be part of the same bargaining unit, not whether workers in different job categories should, does not alter my conclusion. The Final Rule was intended to prevent the proliferation of bargaining units in the health care industry. The Board’s decision below and the majority’s decision today, however, allow for the presence of multiple units of skilled maintenance workers in one acute care hospital; this is directly contrary to the Board’s own Final Rule.
II.
In rejecting the application of the community of interest test, however, I do not necessarily conclude that the Final Rule requires that the Montefiore skilled maintenance workers automatically be considered a residual non-conforming unit which should be included in the same bargaining unit as the Presbyterian skilled maintenance workers. As the majority itself correctly notes, the Final Rule “does not circumscribe or guide the NLRB’s discretion to determine the facilities to be included in a unit when health care providers merge,” Majority Opinion at 1307, but merely enunciates eight different bargaining units by job category. Instead, I think that the appropriate question for the Board is whether the Final Rule applies to the UPMC as a whole, i.e. whether there may be eight and only eight bargaining units in the entire UPMC (only one of which may be a skilled maintenance workers unit) or whether the Final Rule applies separately to each of the five historically independent health care providers that comprise the UPMC such that the UPMC itself could ultimately have forty units (eight bargaining units times five health care facilities).
*1313 If the Final Rule is to be applied to the UPMC as a whole, then the skilled maintenance workers bargaining unit at the Presbyterian complex is a non-conforming unit in that it does not include all of the skilled maintenance workers at UPMC. Upon opening itself up via representation elections, all residual employees, namely the skilled maintenance workers from Montefiore, must be included in the election under St. John’s Hospital, 307 NLRB 767, 1992 WL 122630 (1992).[4] If, however, the Final Rule applies to each of the five health care units independently, then the only residual employees to be included in the Presbyterian complex’s unit of skilled maintenance workers are the telecommunications specialists.
I believe this question is answered by applying the rebuttable presumption that single-facility units are appropriate in the health care industry, explained in detail in Manor Healthcare Corp., 285 NLRB 224, 1987 WL 89813 (1987). This presumption is applied to determine whether employees working at different facilities operated by the same employer should be part of the same bargaining unit, or whether each facility should have its own bargaining unit.
According to Manor Healthcare, “[t]he Board has long held ... that a single facility unit geographically separated from other facilities operated by the same employer is presumptively appropriate for the purpose of collective bargaining.” Id. at 225. The rationale behind this presumption, explained in the context of retail store chains, is as follows:
The [e]mployees in a single retail outlet form a homogenous, identifiable, and distinct group, physically separated from the employees in other outlets of the chain; they generally perform related functions under immediate supervision apart from employees in the other outlets, and thus their problems and grievances are peculiarly their own and not necessarily shared with employees in the other outlets.
Id. (citing Haag Drug Co., 169 NLRB 877, 877-78 (1968). An employer may rebut this presumption, however, upon a “showing of circumstances that militate against its appropriateness.” Id. In order to determine whether the application of the presumption is inappropriate, the Board considers such factors as the geographic proximity of the different facilities to one another, the degree of employee interchange and transfer, the functional integration of the facilities, the administrative centralization of the facilities, common supervision, and bargaining history. West Jersey Health System, 293 NLRB 749, 751, 1989 WL 223929 (1989). Upon reviewing these factors, the Board is in a position to decide whether the degree of integration between or among the facilities is so great that the single-facility presumption is overcome.
The Board itself made clear in its Second Notice of Proposed Rulemaking that it considers the application of the rebuttable single-facility presumption appropriate in just the context that exists here. In discussing hospital mergers and consolidations, the Board noted that “the proposed rule does not purport to address the issue of the appropriateness of a single facility when an employer owns a number of facilities.” 53 Fed.Reg. at 33903 (second notice of proposed rulemaking). It then explained that such determinations would continue to be addressed through adjudication, and cited to Manor Healthcare Corp., in which the single-facility presumption was applied. Id. (citing Manor Healthcare, 285 NLRB 224). Furthermore, the Board and other courts have consistently applied the rebuttable single-facility presumption to cases similar to the instant one. See e.g., Staten Island University Hospital v. NLRB, 24 F.3d 450, 456-57 (2d Cir.1994) (applying the single-facility presumption in concluding that separate nursing bargaining units are appropriate in merged hospital context); Children’s Hospital of San Francisco, 312 NLRB 920, 928, 1993 WL 398480 (1993) (same), enforced sub nom. California Pacific Medical Center v. *1314 NLRB, 87 F.3d 304 (9th Cir.1996); see also West Jersey Health System, 293 NLRB at 752 (finding the employer’s multi-facility hospital rebutted the single-facility presumption and required multifacility units).
The majority believes, however, that the single-facility presumption should not be applied in this case. It reasons that, because the Presbyterian complex is comprised of eight different buildings, its skilled maintenance worker unit should be thought of as a multi-facility unit, and thus the single-facility presumption does not apply. Majority Opinion at 1305-1306. I think the majority applies too literal a meaning to the word “multi-facility,” appearing to believe that if employees work in different buildings of the same hospital at the same site, their bargaining unit is a multi-facility unit. As I understand it, however, the fact that one hospital is comprised of several different buildings does not mean that its workers’ bargaining units are multi-facility bargaining units. If a hospital — or any enterprise — is comprised of several buildings on one site and has historically been an integrated unit, the single-facility presumption may apply to its bargaining units. See, e.g., Hartford Hospital and New England Health Care Employee Union, 318 NLRB No. 3 (1995), 1995 WL 468326 at *4, *16 (applying the single-facility presumption to a psychiatric hospital comprised of “several connected and unconnected buildings” and “four residential group homes ..., two of which are located on the main campus and two of which are located in the surrounding community”).
In my view, the skilled maintenance worker bargaining unit at the Presbyterian complex is a single-facility unit. While true that the Presbyterian complex is made up of eight separate buildings, these buildings comprise the same health care facility and always have; by all indications, the maintenance workers in the eight buildings comprising the Presbyterian complex always have been members of the same bargaining unit. The question for us to answer, I believe, is whether the unit should continue to be a single-facility unit in light of the merger.
III.
I recognize that some of the factors to be considered in determining whether the single-facility presumption is rebutted are similar or identical to those considered in applying the community of interest analysis. Compare NLRB v. St. Francis College, 562 F.2d 246, 249 (3d Cir.1977) (noting that factors applied in the community of interest test include, inter alia, frequency of employee interchange, geographic proximity, integration of production processes, and history of collective bargaining) with West Jersey Health System, 293 NLRB at 751 (noting that factories considered in determining whether single-facility presumption has been rebutted include, inter alia, employee interchange, geographic proximity, functional integration, administrative centralization, and bargaining history). Indeed, I concede that I have found no cases in which the difference between the application of the community of interest analysis and the rebuttable single-facility presumption is discussed.[5] I nonetheless think that the way in which the standards are applied are different and may materially affect the outcome in this ease.[6]
Most importantly, in applying the single-facility presumption the Board looks at the facilities at issue as a whole rather than *1315 focusing on the bargaining unit at issue. For example, in Manor Healthcare, the Board applied the rebuttable single-facility presumption to determine whether a union could represent the service, maintenance and technical employees at only one of the employer’s three area nursing homes, or whether multi-facility bargaining units were appropriate. Manor Healthcare 285 NLRB at 227-28. In conducting its analysis, the Board did not consider only the integration of the service, maintenance and technical employees. Rather, it looked at the functional integration of the nursing homes as a whole, including “joint activities or interaction for patient care,” “joint outings for area patients,” transfers of patients and employees, as well as administrative centralization and geographic proximity. Id. Similarly, when the Board applied the rebuttable single-facility presumption in West Jersey Health System, it looked at the degree of employee integration for all hospital employees, including nurses, skilled maintenance workers, supply room employees and clerks in the medical records department. West Jersey Health System, 293 NLRB at 750.
By examining the facilities as a whole, the Board can arrive at a conclusion that applies to all of the bargaining units for all of the different job categories. Thus, if the Board concludes that the single-facility presumption applies to the Presbyterian complex, any other bargaining units it may have, such as nurse units or guard units, would also be single-facility units. If the Board concludes the presumption was rebutted, then there would only be one skilled maintenance workers unit, one nurses unit, and one guard unit throughout the entire UPMC.
Under the majority’s reasoning, by contrast, the Presbyterian skilled maintenance workers unit could be found to lack a community of interest with the Montefiore workers, but the nurses unit could be found to share one. That would mean the UPMC management could be required to negotiate with two skilled maintenance worker units, but only one nurses unit. Such an outcome leads to unit proliferation that the Final Rule sought to control, and it provides no sorely needed predictable guideline for recently merged hospitals regarding appropriate bargaining units.
IV.
Accordingly, I would deny enforcement of the Board’s Order to Bargain, vacate the portion of the Board’s decision concluding that the Montefiore skilled maintenance workers need not be included in the representation election, and remand for application of the single-facility presumption. I would direct on remand that the Board allow for more fact-finding on the issue of employee interchange among all employees at all the historically independent hospitals that comprise the UPMC as there is insufficient evidence on the record regarding this point.

. While the Board specifically stated that it sought "to avoid the doctrinal formulations utilized under adjudication” in its rulemaking process, 53 Fed.Reg. 33905, the test it applied was very similar to the community of interest analysis. The community of interest test is applied to ensure that employees are grouped in bargaining units with other employees who share such factors as:
(1) similarity in the scale and manner of determining earnings; (2) similarity in employment benefits, hours of work and other terms and conditions of employment; (3) similarity in the kind of work performed; (4) similarity in the qualifications, skills and training of the employees; (5) frequency of contact or interchange among the employees; (6) geographic proximity; (7) continuity or integration of production processes; (8) common supervision and determination of labor-relations policy; (9) relationship to the administrative organization of the employer; (10) history of collective bargaining; (11) desires of the affected employees; (12) extent of union organization.
NLRB v. Saint Francis College, 562 F.2d 246, 249 (3d Cir.1977).

. The Board did not argue, nor could we conclude, that there are extraordinary circumstances *1312 at issue here. "The Board clearly intended ‘to construe the ... exception [for extraordinary circumstances] narrowly, so that it does not provide an excuse, opportunity, or "loophole” for redundant or unnecessary litigation and the concomitant delay that would ensue.' " St. Margaret Memorial, 991 F.2d at 1153 (citing 53 Fed.Reg. at 33,932 (second notice of proposed rulemaking)).

. This is not to say that the community of interest analysis is inappropriate for industries other than acute care hospitals. Indeed, it has long been applied. See, e.g., Libbey—Owens—Ford Company v. NLRB, 495 F.2d 1195 (3d Cir.1974), cert. denied 419 U.S. 998, 95 S.Ct. 313, 42 L.Ed.2d 272 (1974) (applying community of interest analysis to determine appropriate bargaining unit in glass industry); Dezcon, Inc., 295 NLRB 109, 1989 WL 224117 (1989) (applying community of interest analysis to construction industry); Marion Power Shovel Company, 230 NLRB 576, 1977 WL 8821 (1977) (applying community of interest analysis in shovel manufacturing industry). The Final Rule simply makes clear it is inapplicable within the context of the health care industry.

. The majority finds that St. John’s Hospital is not controlling in this case. I disagree. While St. John's Hospital did concern issues regarding job classification, not number of facilities, its basic holding that an existing non-conforming unit seeking to open itself up to some residual employees must open itself up to all, is controlling here if we find the Final Rule applies to the UPMC as a whole.

. I note that the Board and the courts often appear to conflate the two standards. For example, in Staten Island University Hospital, a case in which the Second Circuit applied the single-facility presumption in order to determine the appropriateness of separate bargaining units for nurses in two merged hospitals, the court looked to community of interest as one of the major prongs of its single-facility presumption analysis. Staten Island University Hospital, 24 F.3d at 457. Similarly, in Children’s Hospital, the Board found the employer had failed to rebut the single-facility presumption in great part because the Board did not find that “the bargaining unit, limited to the staff registered nurses working at [one of the now merged hospitals] ... has lost its identity as a separate bargaining unit." Children’s Hospital, 312 NLRB at 929. As noted above the standards are similar and confusion is understandable.

. In fact, I take the Board's (and the majority's) rejection of the single-facility presumption in favor of the community of interest analysis in this case as evidence that the Board shares my belief that the analyses are distinct.