**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARYLAND TRANSIT
ADMINISTRATION,

*Petitioner,*

v.

No. 11-1412

SURFACE TRANSPORTATION BOARD;
UNITED STATES OF AMERICA,

*Respondents.*

On Petition for Review of an Order of
the Surface Transportation Board.
(32609)

Argued: September 19, 2012

Decided: November 21, 2012

Before NIEMEYER and DIAZ, Circuit Judges, and
Max O. COGBURN, Jr., United States District Judge for
the Western District of North Carolina,
sitting by designation.

Petition for review denied by published opinion. Judge Nie-
meyer wrote the opinion, in which Judge Diaz and Judge
Cogburn joined.

## COUNSEL

**ARGUED:** W. Eric Pilsk, KAPLAN KIRSCH & ROCK-WELL, LLP, Washington, D.C., for Petitioner. Erik G. Light, SURFACE TRANSPORTATION BOARD, Washington, D.C., for Respondents. **ON BRIEF:** Charles A. Spitulnik, Allison I. Fultz, KAPLAN KIRSCH & ROCKWELL, LLP, Washington, D.C., for Petitioner. Ignacia S. Moreno, Assistant Attorney General, John E. Arbab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Raymond A. Atkins, General Counsel, Evelyn G. Kitay, Associate General Counsel, SURFACE TRANSPORTATION BOARD, Washington, D.C., for Respondents.

---

## OPINION

NIEMEYER, Circuit Judge:

The Maryland Transit Administration ("MTA"), as the owner of the railroad right-of-way running between Clayton, Delaware, and Easton, Maryland, applied to the Surface Transportation Board ("STB" or "Board") (formerly, the Interstate Commerce Commission) to abandon freight transportation use of the right-of-way and to convert it to a recreational trail, as authorized by the National Trails System Act ("the Trails Act"), 16 U.S.C. § 1247. The Trails Act authorizes owners of railroad rights-of-way to enter into agreements with entities, called sponsors, under which the sponsors agree to convert the right-of-way into recreational trails, so long as they agree to reserve to the railroad the right to return the right-of-way to railroad use. As part of the application for conversion to trail use, the sponsors must agree to "assume full responsibility . . . for any legal liability arising out of such . . . use" or agree to indemnify the railroad for "any potential liability" and assume responsibility for the payment of all taxes assessed with respect to the right-of-way. 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(a).

The MTA submitted to the STB interim user agreements it had reached with two sponsoring governmental agencies, in which the sponsors agreed to indemnify the MTA for potential liability, subject to limitations of state sovereign immunity and to future legislative appropriations. The STB rejected the MTA's application, concluding that instead of assuming full responsibility for legal liability or indemnifying the MTA for any potential liability, the proposed sponsors conditioned their undertakings by subjecting them to sovereign immunity and to future state legislative appropriations. The STB explained that instead of assuming "full responsibility," the proposed sponsors "offer[ed] the possibility of no" responsibility.

The MTA filed this petition for review, contending (1) that the conditions imposed by the sponsors do "not narrow the scope of the indemnity" that would be undertaken and that the limitations of sovereign immunity and legislative appropriations were necessary; (2) that by requiring an unqualified indemnity clause, the STB's regulation is, in any event, "an unreasonable and impermissible construction of the Trails Act because it infringes on state sovereignty without clear expression of congressional intent to do so"; and (3) that the STB inappropriately refused to exercise its duty to evaluate the substance of the sponsors' undertakings by interpreting its responsibilities to be only ministerial.

For the reasons we give herein, we find the MTA's arguments unpersuasive, especially in light of its burden to demonstrate that the STB acted arbitrarily and capriciously. *See* 5 U.S.C. § 706(2). Accordingly, we affirm the decision of the STB and deny the MTA's petition for review.

I

The MTA acquired the 54.1-mile railroad right-of-way between Clayton, Delaware, and Easton, Maryland, from the trustees of the Penn Central Transportation Company in 1982 and later, for several years, tried to use it as a railroad through

an operations agreement with the Chesapeake Railroad Company. After the Chesapeake Railroad Company failed, however, the MTA filed a notice with the STB that it intended to abandon the use of the right-of-way for railroad transportation and to covert the right-of-way to a recreational trail. As required by the Trails Act and regulations under it, the MTA, at the time also acting as a potential trail sponsor, included in its notice a "statement of willingness" to assume "full responsibility" for any legal liability arising out of the recreational trail use and for the payment of any taxes that might be assessed against the right-of-way.

The STB duly issued a "certificate of interim trail use" ("CITU") to the MTA in January 2006, thus giving MTA 180 days to negotiate a trail use agreement. Under the STB's regulations, any sponsor was required "to assume full responsibility . . . for any legal liability arising out of the use of the right-of-way (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability)" and "for the payment of all taxes assessed against the right-of-way." 49 C.F.R. § 1152.29(a)(2).

After several extensions, in September 2008, the MTA shifted course. Rather than assume direct responsibility as a trail sponsor, the MTA submitted two new interim trail use agreements to the STB, one with the Delaware Department of Natural Resources and Environmental Control and one with the Maryland Department of Natural Resources. The MTA asked the Board to vacate the existing CITU and issue new CITUs reflecting the new sponsors' assumption of responsibility. In each agreement the sponsor conditioned its undertaking to indemnify the MTA from liability. The agreement between the MTA and the Delaware sponsor provided:

> Notwithstanding the requirements of subsection (a) [providing for indemnity and liability], *nothing contained in this Agreement shall constitute or be deemed to constitute an obligation of future appro-*

*priations by the Delaware General Assembly*. MTA acknowledges that Licensee must obtain appropriations prior to payment of any damages. A lack of funds to perform any aspect of this Agreement due to insufficient appropriation by the Delaware General Assembly shall not constitute a breach of this Agreement.

(Emphasis added). In its "statement of willingness to assume financial responsibility" submitted with the agreement, the Delaware Department of Natural Resources reiterated the limitation of its undertaking, stating that it "is entitled to sovereign immunity, and accordingly, will indemnify MTA against any potential liability provided that such indemnification shall not constitute or be deemed to constitute an obligation of future appropriations by the Delaware General Assembly."

The agreement between the MTA and the Maryland sponsor provided similarly:

In order to establish interim trail use and rail banking under 16 USC 1247(d) and 49 CFR 1152.29, Lessee is willing to assume, *under the provisions of the Maryland Tort Claims Act*, responsibility for . . . any legal liability arising out of the Lessee's use of the Area as a public recreation rail trail.

\* \* \*

*Subject to appropriations by the Maryland General Assembly and to the extent permitted by law (if at all)*, Lessee shall protect, indemnify, defend and hold harmless . . . Lessor . . . against and with respect to any and all liabilities arising out of or in any way connected with (a) the exercise or performance by Lessee . . . , (b) the use or operation by Lessee . . . , or (c) work performed by or on behalf of the Lessee upon the Trail.

(Emphasis added).

At the first level of review, the STB's Acting Director of the Office of Proceedings denied the MTA's application to convert the right-of-way to a trail because the sponsors failed to comply with the undertakings required by Regulation 1152.29(a)(2). The Acting Director noted that subjecting the sponsors' agreements to indemnify the MTA to future appropriations and making any liability subject to sovereign immunity could negate the required indemnification.

On appeal to the STB, the Board affirmed the Acting Director. The Board noted that under the Trails Act, prospective trail sponsors are required to assume full responsibility for "any legal liability" arising out of the use of the right-of-way as a trail or, as authorized by regulation, to indemnify the railroad for "any potential liability." It explained, "[r]ecognizing that many States and their subdivisions enjoy sovereign immunity, the Board's regulations allow them to satisfy the Trails Act by agreeing to indemnify the railroad against 'any potential liability.'" (Quoting 49 C.F.R. § 1152.29(a)(2)). The Board noted, however, that the Delaware and Maryland sponsors "d[id] not satisfy the requirements of the Trails Act and [the STB's] regulations." With respect to the Delaware sponsor's undertaking, the Board pointed out that the sponsor's willingness to indemnify the MTA was "subject to the requirements of Delaware law" and that the Delaware General Assembly "might not provide funds in sufficient amounts to discharge [the sponsor's] obligations." And with respect to the Maryland sponsor's undertaking, the Board identified similar conditions, pointing out that the Maryland sponsor would indemnify the MTA only "under the provisions of the Maryland Tort Claims Act" and "subject to appropriations by the Maryland General Assembly." Further, the Maryland sponsor included the qualification that it would indemnify the MTA only "to the extent permitted by law (if at all)." Finally, the Board noted that the Maryland sponsor failed to include any undertaking to pay taxes

that might be assessed against the right-of-way. In conclusion, the Board explained that both sponsors "offer[ed] the possibility of no indemnification for the abandoning railroad" and accordingly found that their undertakings did not comply with the Trails Act and Regulation 1152.29(a)(2).

From the decision of the Board, dated February 24, 2011, the MTA filed this petition for review. *See* 28 U.S.C. § 2344.

## II

The MTA argues first that it satisfied the requirements of the Trails Act and Regulation 1152.29(a)(2) insofar as it included in its agreements with the two sponsors "indemnity clauses that indemnified MTA for any legal liability MTA might face due to the use of the right-of-way as a trail." It asserts that the clauses did so in "plain language." But as quickly as the MTA makes this assertion, it acknowledges, as it must, that its agreements included "language to make clear that the obligations of the [sponsors] were subject to the availability of funds pursuant to an appropriation from the legislature." It asserts that such language was "necessary to reflect state constitutional limits." And it concludes:

> Being unable to commit to a future payment does not reduce the scope of the indemnity provision, nor does it reduce [the sponsors'] liability under the indemnity agreement. At most, the reservation means that there may be a time in the future when [the sponsors] would have to wait for a future appropriation before [they] could pay MTA's indemnity claim. But [the sponsors] have still undertaken to indemnify MTA for any potential legal liability, as the Trails Act requires. The limitations regarding the ability to pay any indemnity claim are not inconsistent with the Trails Act requirement that a trail sponsor assume responsibility for any "legal liability."

It can hardly be argued that a requirement demanding that a party assume *full* responsibility *for any liability* or indemnify the railroad for *any potential liability* is satisfied by a promise to indemnify only if the principles of sovereign immunity so allow or if the money becomes available pursuant to future appropriations. As the Maryland sponsor candidly provided in its undertaking, its promise was "subject to appropriations by the Maryland General Assembly and to the extent permitted by law (*if at all*)." (Emphasis added).

We cannot conclude that the STB acted arbitrarily and capriciously in concluding that the MTA user agreements, which included qualifications to the undertakings, did not satisfy the statutory and regulatory obligations that the sponsors assume full responsibility for any liability or indemnify the MTA for any potential liability.

### III

As an alternative position, the MTA contends that "the STB's construction of the Trails Act would result in an impermissible requirement that States waive their sovereign immunity." As it explains, "[T]he STB's construction of the Trails Act would require states to modify, waive, or ignore sovereign limits on their authority, as well as sovereign immunity . . . . [T]he STB would require state agencies to execute an unqualified indemnity provision even if doing so would violate state constitutional limits." The MTA argues that Regulation 1152.29, but not the Trails Act itself, requires the States to waive sovereign immunity by including the alternative that States and state agencies give unqualified indemnity. Therefore, it maintains, the regulation is an unreasonable application of the Trails Act.

The Trails Act provides that a sponsor must "assume full responsibility . . . for any legal liability" arising from the use of the right-of-way as a trail. 16 U.S.C. § 1247(d). The statute thus conditions participation on the trail sponsor's agreement

to *fully protect* the railroad from liability arising from the use of the right-of-way as a recreational trail. The STB, through its Regulation 1152.29, found that the statutory requirement could, for sponsors having immunity, be satisfied by the sponsor's indemnifying the railroad for "any potential liability." 49 C.F.R. § 1152.29(a)(2). The indemnity agreement effectively limits any state agency's undertaking to a contractual obligation, much like the contractual undertaking a state agency would make in any agreement into which it enters to rent office space. Contrary to the MTA's suggestion, the regulation's indemnity option is not an additional, more burdensome condition; it addresses no more than the statute requires—the full-protection of the railroad. The language of both the statute and the regulation requires state sponsors to protect the railroads. If anything, the indemnity option is more friendly to agencies having immunity than is the Trails Act, because the Act, standing alone, would require a state to assume tort liability directly. The regulation's indemnity option thus implements, in a reasonable manner, the Trails Act's requirement that railroads be fully protected while also softening the statute's impact on sovereign immunity. Accordingly, we reject the MTA's claim that the regulation is unreasonable.

More importantly, however, the requirement to protect the railroad does not, as the MTA suggests, impose on a sponsoring state agency an unconstitutional requirement to waive its sovereign immunity. That requirement is made a condition of a federal benefit or gift that the state agency voluntarily elects to receive, and we have long recognized that a state may be required to "waive its sovereign immunity by accepting from Congress a 'gift' or a 'gratuity,' the receipt of which is made conditional on the State's waiver of immunity." *Bell Atl. Md., Inc. v. MCI WorldCom, Inc.*, 240 F.3d 279, 291 (4th Cir. 2001), *vacated on other grounds sub nom. Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002); *see also MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 505 (3d Cir. 2001).

In the case of the Trails Act, Congress created the voluntary federal rails-to-trails program, authorizing but not requiring railroad right-of-way owners and recreational trail sponsors to agree to convert railroad rights-of-way into recreational trails. For those electing to participate in the program, the Act provides two main benefits. First, through the application of federal law, the Act prevents reversionary property interests from vesting, as it normally would following the abandonment of the railroad use, thus preserving the right-of-way for a trail use. *See Preseault v. I.C.C.*, 494 U.S. 1, 8 (1990). Second, by authorizing the conversion, albeit on a temporary basis, the federal government, not the States, remains potentially liable to land owners for takings challenges based on the delayed vesting of reversionary interests involved in railroad rights-of-way. *See Nat'l Ass'n of Reversionary Prop. Owners v. S.T.B.*, 158 F.3d 135, 139 (D.C. Cir. 1998). Because Congress had no obligation to bestow these benefits on the States but made them available to the States on a voluntary basis, they qualify as a federal gift. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999) ("Congress has no obligation to use its Spending Clause power to disburse funds to the States"). Indeed, the MTA has acknowledged the voluntary basis of the program in its brief, stating that "participation in the Trails Act program and its decision to enter into trail use agreements with [the sponsors] are strictly voluntary."

In short, even if the MTA is correct in its understanding that the Trails Act and Regulation 1152.29 mandate a waiver of sovereign immunity, the waiver would only be required as a condition of participating in the rails-to-trails program, a voluntary program in which no State—and indeed, no railroad—is forced to participate. *See Nat'l Wildlife Fed'n v. I.C.C.*, 850 F.2d 694, 696 (D.C. Cir. 1988) (upholding a regulation that interpreted the Trails Act as requiring all transfers of rights-of-way to be voluntary).

IV

Finally, the MTA contends that the STB improperly discharged its duties under the Trails Act by functioning only ministerially, refusing to evaluate the *substance* of its proffered indemnity provisions in the light of applicable state law. It relies on the STB's explanation of its role given in its decision to deny the MTA's application, where the STB stated:

> To fulfill our *ministerial role* under the Trails Act, we need not parse the intricacies of Maryland and Delaware immunity law. Rather, we merely verify that the prospective trail sponsor has submitted the required documentation to comport with the statute and regulations.

(Emphasis added).

But the STB did not function as mechanically as the MTA claims. In its 11-page opinion, the Board, in some detail, expressed not only its reasons for concluding that the MTA did not satisfy the requirements of the Trails Act and Regulation 1152.29, but it explained the various policies underlying the requirements and making them important. In addition, the Board considered separately each of the MTA's arguments and explained why it found the arguments to be unpersuasive. To be sure, the Board did explain that it was functioning ministerially, but it said so in the context of recognizing that it could not alter the plain requirements of the Trails Act and Regulation 1152.29. In reviewing the Board's thorough decision, we conclude that the MTA's argument is not well taken.

Moreover, there would be nothing to render illegal an agency's adoption of regulations that restrain the degree of discretion it exercises. *See Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991) ("[E]ven if a statutory scheme requires individualized determinations, the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general appli-

cability unless Congress clearly expresses an intent to withhold that authority"). If the agency, through rulemaking, decides to remove discretion from its determinations, then it appropriately relegates to itself a ministerial role. *See Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996) ("A ministerial duty is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty") (citing *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498 (1866)).

Here, in promulgating 49 C.F.R. § 1152.29, the Board parroted the language of the Trails Act but included, as an alternative to assuming full responsibility for any liability, the right of a state sponsor to indemnify the railroad for any potential liability. The need for assuming full financial responsibility by either means was, however, demanded by the Act. Thus, when the Board made the individualized decision in this case, it simply confined its role to verifying the trail sponsors' undertakings and concluding that because the trail sponsors qualified their indemnifications of the railroad, they did not provide the railroad with the protection required by the Trails Act. We cannot conclude that this decision manifested an improper discharge of the agency's duties.

For the reasons given, we affirm the decision of the STB and deny the MTA's petition for review.

*IT IS SO ORDERED*.