## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## NEW ENTERPRISE STONE AND LIME COMPANY, Inc., Respondent.

### No. 17539.

United States Court of Appeals
Third Circuit.

Argued May 19, 1969.

Decided June 26, 1969.

Kenneth Pearlmen, Atty., N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Washington, D. C., Atty., N.L.R.B., on the brief), for petitioner.

Winthrop A. Johns, Reilly, Johns & Zimmerman, Washington, D. C., for respondent.

Before FREEDMAN, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

The National Labor Relations Board has applied for enforcement of its order against New Enterprise Stone and Lime Company, Inc.[1]  The Board found that the Company violated section 8(a) (5) and (1) of the National Labor Relations Act[2] by refusing to recognize and bargain with a union previously certified as the exclusive bargaining representative of the Company's employees at a plant unit.[3]  The Company resists enforcement of the order on the basis that the single plant unit selected by the Board was not appropriate; that because of the intermingling of employees and business functions among several plants, a larger and broader segment of the Company should have been chosen by the Board as the unit in which to conduct an election.

To decide whether the Company was in violation of the Act, it therefore becomes necessary to ascertain whether the Board abused its discretion in the selection of the single plant as a "unit appropriate for the purposes of collective bargaining." [4]

■■  We are mindful that the burden was on the Company to demonstrate that the Board abused its discretion in determining the appropriateness of the bargaining unit in question, and that one undertaking this burden "wages an uphill fight." N.L.R.B. v. Schill Steel Prods., Inc., 340 F.2d 568, 574 (5 Cir. 1965). The burden becomes especially onerous where, as here, a single-plant unit was certified; the Board has working in its favor a presumption that a plant unit is appropriate absent a bargaining history on a multi-location basis or a showing of company-wide integration sufficient to negate the autonomy of the single unit.[5]

1. See section 10(e) of the National Labor Relations Act, as amended 61 Stat. 136, 73 Stat. 519, 29 U.S.C.A. § 151 et seq. The Board's order and decision, handed down on Dec. 1, 1967, are reported at 168 N.L.R.B. 95.

2. 29 U.S.C.A. § 158.
   "(a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;
   \*    \*    \*    \*    \*
   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a)."

3. Section 9(b) of the National Labor Relations Act vests the Board with authority to "decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof \* \* \*."
   Upon the Union's petition (United Cement, Lime and Gypsum Workers International Union, AFL–CIO), a hearing was held and on February 10, 1967, the Regional Director issued a Decision and Direction of Elections in which he concluded that a single-plant unit, containing 75 employees, was appropriate for pur-

poses of collective bargaining. The Company's opposing position that the only appropriate unit was one composed of all its operations within a 50–60 mile radius of the Central Office was rejected. The Board declined to review the decision of the Regional Director as requested by the Company.

4. The Company's business involves construction and maintenance work, the operation of quarries, and the manufacture and sale of sand, limestone, bituminous, ready-mix, and concrete products. It conducts its business operations through approximately 21 plants and divisions located from 10 to 420 miles from the main office in New Enterprise, Pennsylvania. The geographical divisioning of these plants or divisions is such that they may be grouped into two categories—the "Eastern" area, composed of 5 plants, and the "non-Eastern" area, composed of 14 plants. It is the Company's contention that the "appropriate" unit should be composed of all 14 of the non-Eastern area plants, and not the single-plant unit certified by the Board. The plant unit certified was the Concrete Products Division at Roaring Springs, Pennsylvania, which produces structural beams, pipe, and other concrete products.

5. See N. L. R. B. v. Western and Southern Life Ins. Co., 391 F.2d 119, 123 (3 Cir. 1968), where we approved the Board's

In rebuttal, the Company urges that the work of the various plants is integrated to such an extent that the identity of the local plants as autonomous units is negated. As evidence of such integration, the Company emphasizes that a significant number of employees are regularly transferred from unit to unit within the multi-plant area. Further factors relied on by the Company to demonstrate this integration are the central handling of sales, billings, purchases and payroll operations, some uniform management policies, and integrated operations and common ownership of the plants.

After considering the voluminous testimony which was presented on the issue of integration, the Board found that the unit so certified at the Concrete Products Division plant included pre-stressed concrete employees, and essentially excluded other employees. It also concluded that the workers transferred in and out of this plant were not the type of employee represented by the Board-certified union. The Board also placed emphasis on the substantial authority vested in each local facility, the different working conditions and different wages for work performed under the same classifications, and the complete absence of a prior bargaining history on a multi-plant basis.[6] It is also significant that in the case of the so-called "Eastern" plants, previously organized and not involved in this suit, the representation has always been on a single-plant basis.

Because section 9(c) vests the Board with discretion in its power to make certifications, we should not lightly overrule its decision; only when its determination is shown to be unreasonable and arbitrary should the reviewing court interfere. Westinghouse Elec. Corp. (Elevator Division) v. N.L.R.B., 236 F.2d 939, 942 (3 Cir. 1956). "In performing its function * * * [pursuant to section 9(b)], the Board has wide discretion * * *. The determination of the appropriate unit is a difficult and complex decision and may seriously affect not only the employer and the employees, but rival unions * * *." N.L.R.B. v. Sun Drug Co., 359 F.2d 408, 412 (3 Cir. 1966).

We conclude that the Company has not met its burden. At best it has shown the possibility that another unit could be appropriate. This does not amount to a showing of an abuse of discretion.[7]

Accordingly, the order of the Board will be enforced.

policy of presumptively finding a single unit "appropriate" in the absence of countervailing evidence. We held that this practice "accords well with the policy of the Act, embodied in §§ 7 and 9(b), which directs the Board to choose bargaining units that 'assure to employees the fullest freedom in exercising the rights guaranteed by this Act.' "

6. Clearly, § 9(c) (5) of the Act prohibits the Board from making the extent to which the employees are organized the controlling factor in its determination. Nevertheless, "both the language and legislative history of § 9(c) (5) demonstrate that the provision was not intended to prohibit the Board from considering the extent of organization as one factor, though not the controlling factor, in its unit determination." National Labor Relations Board v. Metropolitan Life Ins. Co., 380 U.S. 438, 442, 85 S.Ct. 1061, 1063, 13 L.Ed.2d 951 (1965). Thus, the Board's consideration of the fact that no other union was seeking to represent a larger unit was not in violation of § 9(c) (5). See also Metropolitan Life Ins. Co. v. N. L. R. B., 328 F.2d 820 (3 Cir. 1964); N. L. R. B. v. Western and Southern Life Ins. Co., supra, footnote 5.

7. See Corrie Corp. of Charleston v. N. L. R. B., 375 F.2d 149, 154 (4 Cir. 1967); N. L. R. B. v. Puritan Sportswear Corp., 385 F.2d 142, 143 (3 Cir. 1967).