

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-1996

# Presbyterian Univ v. NLRB

Precedential or Non-Precedential:

Docket 95-3048,95-3082

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Presbyterian Univ v. NLRB" (1996). *1996 Decisions.* Paper 98.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/98

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 95-3048 and 95-3082


PRESBYTERIAN UNIVERSITY HOSPITAL,
d/b/a UNIVERSITY OF PITTSBURGH MEDICAL CENTER,

Petitioner/Cross-Respondent

V.

NATIONAL LABOR RELATIONS BOARD

Respondent/Cross-Petitioner


*INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL
UNION 95-95A, AFL-CIO ("the Union"),

Intervenor in Support of Respondent/Cross-Petitioner

*(Granted as per Court's 4/14/95 Order)

ON PETITION FOR REVIEW OF ORDER OF THE NATIONAL LABOR RELATIONS
BOARD

(No. 6-CA-26550)


Argued October 30, 1995

Before:  NYGAARD, ALITO AND SAROKIN, Circuit Judges


(Opinion filed July 10, 1996)

E. DONALD LADOV, ESQUIRE (Argued)
Cohen & Grigsby
625 Liberty Avenue
2900 CNG Tower
Pittsburgh, PA 15222-3115
Attorney for Petitioner/Cross-Respondent

AILEEN A. ARMSTRONG, ESQUIRE
Suite 8101
FRED L. CORNNELL, ESQUIRE (Argued)
National Labor Relations Board
1099 14th Street, N.W.

Washington, DC 20570-0001
Attorneys for Respondent/Cross-
                    Petitioner


MARGARET G. NEIGUS, ESQUIRE
National Labor Relations Board
Contempt Litigation Branch
1099 14th Street, N.W.
Suite 10700
Washington, DC 20570
Attorney for Respondent/Cross-
                    Petitioner

HELEN L. MORGAN, ESQUIRE (Argued)
International Union of Operating
Engineers
1125 17th Street, N.W.
Washington, DC 20036
Attorney for Intervenor


OPINION OF THE COURT


NYGAARD, Circuit Judge.

This case involves a dispute over the appropriate bargaining unit at a health care center resulting from the merger of five separate hospitals.  Presbyterian University Hospital d/b/a University of Pittsburgh Medical Center filed this petition for review of a final order of the National Labor Relations Board.  The NLRB cross-petitioned for enforcement of its order.  The union intervened in support of the NLRB's order. We conclude that there is substantial evidence in the record to support the NLRB's finding that four telecommunications workers are skilled maintenance employees.  We also conclude that the NLRB did not abuse its discretion to determine the appropriate unit when it found that the telecommunications workers at the Presbyterian complex share a community of interest with the skilled maintenance employees in the existing bargaining unit, separate from the skilled maintenance employees at the Montefiore complex.  We will therefore deny UPMC's petition for review and grant the NLRB's petition for enforcement of its order.

I.

UPMC is a private, non-profit, acute care medical center consisting of approximately forty buildings.  UPMC resulted from a series of mergers that began in 1989 between five independent hospitals:  Presbyterian and Montefiore University Hospitals (both acute care hospitals), Eye and Ear Hospital, The Falk Clinic, and Western Psychiatric Institute and Clinic. Bridges and tunnels connect the main buildings of this center. As a result of the merger, UPMC has one board of directors, one president, and centralized scheduling and materials management

systems.  Before the mergers the five hospitals operated under separate licenses; UPMC now operates under a single operating license issued by the Pennsylvania Department of Health.

Since 1972, the union has represented skilled maintenance employees at the Presbyterian complex.  In August 1993, the union sought to add four employees to the existing skilled maintenance unit through a self-determination election.  These four employees work in the Information Services Division at UPMC's Presbyterian complex and have the job title of "Telecommunications Specialists (Voice) I."  Telecommunications workers are responsible for installation, support and maintenance of UPMC's telephone network and work primarily at the Presbyterian complex where the existing unit employees are located.

UPMC opposed the union's representation, asserting that the telecommunications workers were not properly included in the skilled maintenance employees' bargaining unit, as defined by the NLRB's final rule governing the appropriate units in an acute care hospital, 29 C.F.R.  103.30(a)(5).  UPMC further asserted that, even if the telecommunications workers properly could be included in that unit, a self-determination election must also include UPMC's unrepresented, skilled maintenance employees at the Montefiore complex.

After a hearing, the Regional Director issued a Direction of Election, determining that the telecommunications workers were skilled maintenance employees and that they shared a community of interest with the employees in the existing unit.  In a second hearing, the Director addressed the issue of whether all of UPMC's remaining unrepresented skilled maintenance employees, located at the Montefiore complex, must be included in the voting group with the telecommunications workers in order to have a proper residual election.  The Director concluded that the election did not have to include these Montefiore employees, because they worked at a separate facility and UPMC had not overcome the NLRB's single facility presumption.

On review, the NLRB determined that the Director properly included the telecommunications workers in the existing skilled maintenance unit.  The NLRB also determined that the unrepresented skilled maintenance employees located at the Montefiore complex need not be included with the telecommunications workers from the Presbyterian complex in order to have a proper election.  According to the NLRB, although the Director had incorrectly applied the single facility presumption, the existing skilled maintenance unit was still appropriately considered a multi-facility unit.  See Presbyterian Univ. Hosp., 313 N.L.R.B. 1341, 1341-42 (1994).  By order of June 1, 1994, based on the telecommunications employees' self-determination election, the Director certified the Union as their collective bargaining representative and included those employees in the existing skilled maintenance unit.

The union then requested bargaining with UPMC concerning the telecommunications workers, but UPMC refused to recognize the union in order to obtain review of the NLRB's decision.  As expected, the union filed an unfair labor practice

charge.  In August 1994, the Regional Director issued a Complaint and Notice of Hearing on the matter and the General Counsel filed a motion for summary judgment.  The NLRB granted the motion, finding that UPMC violated  8(a)(1) & (5) of the National Labor Relations Act, 29 U.S.C.  158(a)(1) & (5), by refusing to bargain concerning the telecommunications employees.

## II.

The NLRB's interpretation of the Act normally is entitled to deference and should be upheld if it is rational. St. Margaret Memorial Hosp. v. NLRB, 991 F.2d 1146, 1151 (3d Cir. 1993).  We uphold its factual findings if they are "supported by substantial evidence on the record as a whole." Id. at 1152. Because this case involves the NLRB's unit determination, we note that a unit may still be upheld on review even if it is not the "most appropriate" unit.  See American Hosp. Ass'n v. NLRB, 499 U.S. 606, 610, 111 S. Ct. 1539, 1542 (1991).  "Whether a unit is appropriate involves a large measure of informed discretion vested in the Board and is rarely to be disturbed."  St. Margaret, 991 F.2d at 1152 (internal quotations omitted). Therefore, UPMC must fight an uphill battle "to show that the Board abused its discretion in determining the appropriateness of the bargaining unit in question." Id. (internal quotations omitted).  See also NLRB v. New Enterprise Stone and Lime Co., 413 F.2d 117, 118 (3d Cir. 1969).

The Act expressly delegates responsibility for unit determination to the NLRB.  29 U.S.C.  159(b) provides, in pertinent part:

> The Board shall decide in each case whether,
> in order to assure to employees the fullest
> freedom in exercising the rights guaranteed
> by this subchapter, the unit appropriate for
> the purposes of collective bargaining shall
> be the employer unit, craft unit, plan unit,
> or subdivision thereof . . . .

As a result, "[t]he Board may develop and apply rules regarding appropriate units to circumscribe and to guide its discretion." St. Margaret, 991 F.2d at 1152.

Special concerns regarding the undue proliferation of bargaining units in the health care industry prompted the NLRB to adopt a final rule.  As to acute care hospitals, this final rule provides the appropriate job classifications:

> Except in extraordinary circumstances and in
> circumstances in which there are existing
> non-conforming units, the following shall be
> appropriate units, and the only appropriate
> units, except that if sought by labor
> organizations, various combinations of units
> may also be appropriate:
> > (1) All registered nurses.
> > (2) All physicians.
> > (3) All professionals except for
> > registered nurses and physicians.
> > (4) All technical employees.
> > (5) All skilled maintenance employees.

                    (6) All business office clerical
                    employees.
                    (7) All guards.
                    (8) All nonprofessional employees except
                    for technical employees, skilled
                    maintenance employees, business office
                    clerical employees, and guards.

29 C.F.R. 103.30(a). The NLRB, in exercising its discretion through the rulemaking process, heeded the congressional "admonition" in the legislative history to the 1974 Amendments (which brought acute care hospitals within the ambit of the Act) to give due consideration to preventing undue proliferation of bargaining units in the health care industry. American Hosp. Ass'n v. NLRB, 499 U.S. 606, 616-17, 111 S.Ct. 1539, 1545 (1991) (upholding the final rule as based on substantial evidence and supported by reasoned analysis).

The legislative history to the 1974 Amendments raised concerns regarding unit scope issues. As reflected in the rulemaking record, "[t]he Board justified its selection of the individual bargaining units by detailing the factors that supported generalizations as to the appropriateness of those units." American Hosp. Ass'n, 499 U.S. at 619, 111. S. Ct. at 1546. For example, the NLRB considered past adjudicatory decisions in which units of RNs, technical employees and skilled maintenance employees consistently recurred. See Collective Bargaining in the Health Care Industry, 53 Fed. Reg. 33900, 33903 (Sept. 1, 1988) (second notice of proposed rulemaking). The first notice of proposed rulemaking indicated that

          [t]he Board has in the last 13 years received
          many hundreds of petitions for health care
          units. Generally, the units requested have
          been in approximately six, predictable
          groupings: registered nurses, other
          professional employees, technical employees,
          busines[s] office clerical employees, and
          skilled maintenance employees. . . . It is
          our observation that these groups of
          employees generally exhibit the same internal
          characteristics, and relationship to other
          groups of employees, in one health care
          facility as do like groups of employees at
          other facilities.

52 Fed. Reg. 25143-44. Therefore, in promulgating the final rule, the NLRB exercised its discretion to avoid case by case adjudication concerning unit scope issues. See 52 Fed. Reg. 25145.

                              III.

UPMC first challenges the NLRB's decision to classify the four telecommunications workers as skilled maintenance employees. The NLRB adopted the Director's decision that they were properly classified as skilled maintenance employees under the final rule, 29 C.F.R. 103.30(a)(5). 313 N.L.R.B. at 1341. The Director considered the following relevant factors: function and skill level of the telecommunications workers; education,

licensing and training; supervision; wages, hours and working conditions; interaction with other employees; labor market and career path; whether they worked on the physical plant; and whether their tasks involve equipment and systems.

In exhaustive detail, the Director explained why he considered the telecommunications workers skilled maintenance employees. Identifying the specific tasks that these workers have in common with unit employees, the Director found that: the telecommunications workers perform work functions that relate to maintenance of the physical plant; their job requires one to three years of experience; their work involves installing wiring and repairing telephones; they are required to have a high school diploma and one to three years of experience; their wage rates compare to that of other unit employees; they work daylight hours; and they interact regularly with other unit employees, especially electricians. Based on these findings, which are supported by substantial evidence, the Director determined and the NLRB agreed that the telecommunications workers were skilled maintenance employees who shared a community of interest with the existing unit employees.

UPMC argues that the telecommunications workers do not work on its physical plant, but instead work on its information systems network. This distinction is artificial. The employees install the wiring and jacks, which are "woven into the physical plant just as firmly as the wiring and outlets that form the electrical system are woven into it. . . . [A] telephone system is an integral part of the physical plant." NLRB Brief at 30.

UPMC characterizes the telecommunications workers as unskilled, even though they use some of the same tools as other unit employees, their installation work is similar to that performed by the electricians, and their job requires that they diagnose telecommunications equipment malfunctions and determine whether that equipment should be repaired or replaced. The mere fact that these employees are unlicensed and uncertified does not automatically exclude them from the unit; other unit members, such as painters and plasterers, are uncredentialed, yet they are considered skilled. UPMC also contends that the telecommunications workers should be excluded because they have different immediate supervisors than the existing unit employees, but the NLRB weighed this factor and determined it was insufficient.

The telecommunications workers are required to have experience with a major telephone or interconnect company, perform tests on telephone wiring and equipment and work alongside unit employees, especially electricians, because telephone wiring is often routed in close proximity to electrical wiring. We find substantial evidence to support the NLRB's determination that the telecommunications workers constitute "skilled maintenance employees."

Because the majority of the telecommunications workers' assignments are within the Presbyterian complex, the NLRB found it appropriate to include them in the existing skilled maintenance unit of employees at the Presbyterian complex. We hold that the NLRB did not abuse its discretion by determining

that the four telecommunications workers appropriately could be added to the existing skilled maintenance unit through a self-determination election.

IV.

UPMC next argues that even if the NLRB correctly allowed the telecommunications workers to vote on joining the existing unit, it could not properly allow them to vote without opening the election up to all of UPMC's skilled maintenance employees; therefore, the NLRB, by not also including the Montefiore skilled maintenance employees in the election, ignored its own rule and abused its discretion.

In determining whether the NLRB followed its own final rule or abused its discretion in defining the appropriate unit for the self-determination election, we are mindful of the NLRB's broad powers to determine appropriate bargaining units, Libbey-Owens-Ford Co. v. NLRB, 495 F.2d 1195, 1199 (3d Cir.), cert. denied, 419 U.S. 998 (1974), and to formulate election procedures and policies. St. Margaret, 991 F.2d at 1152. The NLRB's underlying factual determinations on this issue are supported by substantial evidence. Although UPMC makes arguments that might be persuasive were we determining the matter de novo, it falls far short of showing that the NLRB abused its discretion when it determined that the skilled maintenance employees at the Presbyterian complex should be treated as a unit distinct from their counterparts at the Montefiore complex.

A.

The NLRB rejected UPMC's argument that, under the final rule, the existing unit of skilled maintenance employees at the Presbyterian complex constituted an existing non-conforming unit as defined by 29 C.F.R.  103.30(f)(5). 113 N.L.R.B. at 1342. The NLRB, in its discretion, also rejected the Director's decision to consider the unit a single facility unit to which the single facility presumption applied. Instead, the NLRB determined that the existing unit more accurately constituted a conforming, multi-facility unit. Id. at 1341-42. It based this decision on the fact that the health care center includes two previously independent acute care hospitals and consists of several, separate buildings, many of which are blocks away from the others. The NLRB noted that, although some of the buildings are connected by tunnels and bridges, not all of the buildings in the Presbyterian complex are interconnected with the buildings in the Montefiore complex. Thus, based on the peculiarities of UPMC, it concluded that the existing unit employees did not truly work at a single facility. The NLRB expressly found that the existing unit conformed to the final rule, because, except for the four telecommunications workers the union sought to add, the unit encompassed all skilled maintenance employees within the Presbyterian complex.

In order to determine whether, after the hospital mergers, the existing unit remained an appropriate multi-facility unit or whether the skilled maintenance employees working at the Montefiore complex must be included, the NLRB, citing Dezcon, Inc., 295 N.L.R.B. 109 (1989), examined the traditional community of interest factors, which include:

> geographic proximity, local autonomy,
> employee interchange and interaction,
> functional integration, terms and conditions
> of employment, and bargaining history.

Presbyterian Univ. Hosp., 313 N.L.R.B. at 1342.

Applying these factors, the NLRB found the following: 1) the geographic proximity of the Presbyterian complex to the Montefiore complex has not had a substantial impact on the existing skilled maintenance unit's operations; 2) there is a lack of contact between the employees at the Presbyterian complex and Montefiore complex; 3) there is no interchange or interaction between the groups of Presbyterian skilled maintenance employees and Montefiore skilled maintenance employees, and there have never been any joint projects involving them; 4) the employees maintain their respective facilities; 5) material purchases are performed by the respective facilities; 6) job openings at a complex are posted within that complex first, then employer-wide; 7) the telecommunications workers are located at the Presbyterian complex and are responsible for servicing the buildings within that complex; 8) Montefiore has its own switch system and is serviced by outside telecommunications contractors; and most importantly, 9) the Presbyterian skilled maintenance unit has a 20-year-long history of successful and peaceful bargaining. There is substantial evidence in the record to support the NLRB's findings.

Based on its findings, the NLRB determined that the Presbyterian complex skilled maintenance unit remained a distinct and appropriate unit, and that adding the telecommunications workers would not change "the fact that Presbyterian's and Montefiore's skilled maintenance operations are distinct." 313 N.L.R.B. at 1343. Thus, the NLRB ruled that the existing unit remained appropriate and that the four telecommunications workers constituted all the employees who were residual to that unit. On petition for enforcement of its order, the NLRB emphasizes the unit's successful and peaceful 20 year bargaining history and argues that including the four telecommunications workers does not pose a risk of disruption to the existing bargaining relationship, while including the 49 special maintenance employees at the Montefiore complex would cause a potentially disruptive and significant change in the unit's composition.

### B.

UPMC's main argument is that the NLRB violated its final rule by permitting a separate unit at the Presbyterian complex. UPMC points to the words "all skilled maintenance employees" in the rule, 29 C.F.R. 103.30(a)(5), and argues that all skilled maintenance employees of UPMC must be treated as a unit, because, as a result of the mergers, UPMC now operates under a single Pennsylvania license. Therefore, UPMC maintains, the NLRB cannot treat its Presbyterian and Montefiore facilities as distinct and must include the Montefiore skilled maintenance employees in a self-determination election.

In support of its argument, UPMC asserts that the final rule makes no distinction between acute care hospitals that are comprised of more than one facility or occupy more than

one building and those consisting of only one facility. The NLRB responds that the rule did not make that distinction because it was not intended to affect the NLRB's discretion to determine through adjudication how many facilities of a single employer (as opposed to which job classifications) to include in an appropriate unit.

We agree with the NLRB. The rule simply does not circumscribe or guide the NLRB's discretion to determine the facilities to be included in a unit when health care providers merge (indeed, it neither considered nor requested evidence on this issue); it regulates the different job categories to be organized in appropriate units in the health care industry. Nor does the NLRB's finding that UPMC consists of multiple facilities even though it operates under a single license for an acute care hospital contradict its final rule. In that rule, the NLRB defined an acute care hospital to distinguish such institutions from other health care facilities; it did not delegate its discretion to make multi-facility determinations to state hospital licensing entities. UPMC interprets the rule in an artificially restrictive manner which ignores both reality and the purpose for which the NLRB promulgated it.

The notices of proposed rulemaking and the final rule do not even begin to delve into the issues of mergers and multiple facilities of a single employer-hospital. SeeCollective Bargaining Units in the Health Care Industry, 52 Fed. Reg. 25142-25149 (July 2, 1987) (notice of proposed rulemaking); 53 Fed. Reg. 339000-33935 (Sept. 1, 1988) (second notice of proposed rulemaking); 54 Fed. Reg. 16336-16348 (April 21, 1989) (final rule). They clearly indicate that analysis regarding the number of facilities to be included in a unit of, for example, skilled maintenance employees, will still be appropriate. See 53 Fed. Reg. at 33903 ("[T]he proposed rule does not purport to address the issue of the appropriateness of a single facility when an employer owns a number of facilities, which the Board will continue to address through adjudication. Manor Healthcare Corp., 285 N.L.R.B. [224 (1987)]."); see also 54 Fed. Reg. at 16338 n.2 (The rule merely determines that job classification/scope of an appropriate unit within an acute care hospital need not be continuously relitigated, but the Board will still have to resolve issues of unit composition, including whether a single facility is appropriate.). The fact that the final rule does not discuss merged hospitals made up of originally separate hospitals, health care providers operating hospitals made up of separate facilities, or state licensing terminology referring to the merger of two or more hospitals as a single hospital for licensing purposes, does not prevent the NLRB from considering the actual makeup of various health care entities in order to determine the appropriate number of an employer's facilities to which it must apply the eight bargaining unit categories. Instead, it simply indicates that the rule does not address the issue. Thus, UPMC's argument that the final rule decided unit composition issues is wholly unsupported and, in fact, contradicted by the rulemaking record.

Arguing that prior NLRB precedent requires us to deny

enforcement of its order, UPMC cites St. John's Hospital, 307 N.L.R.B. 767 (1992). The NLRB in that case required that, if a union representing a non-conforming unit sought to represent residual employees, all residual employees had to be added to an existing unit by means of a self-determination election. Therefore, according to UPMC, if the telecommunications workers are allowed to vote to join the existing skilled maintenance unit, then all UPMC's remaining unrepresented skilled maintenance employees must be involved in the self-determination election. This argument is without merit.

St. John's Hospital does not control the NLRB's decision here. First, unlike the situation in St. John's, the NLRB here found that the existing unit was a conforming unit. UPMC's approach in characterizing the existing unit and single facility units generally as "non-conforming units," reads a presumption into the rule that the only appropriate unit is an employer-wide unit. We find nothing either in the rule or its rulemaking history to indicate that the NLRB created this unique presumption for acute-care hospitals.

Moreover, St. John's Hospital involved job classification, not multiple facility, issues. Because the employer in St. John's Hospital had already recognized splintered units of five different types of skilled maintenance employees, the Regional Director found that a sixth unit made up of remaining, unrepresented skilled maintenance employees would be appropriate. The NLRB, however, found that the five non-conforming units were more than enough and that a sixth unit of skilled maintenance employees would lead to further undue proliferation. It therefore ruled that, in order to represent residual employees, the union must try to add them to one of the existing five non-conforming units, rather than create another non-conforming unit. St. John's Hospital is plainly distinguishable. The NLRB here simply chose not to disturb the existing Presbyterian skilled maintenance unit and permitted all employees residual to that conforming unit to join it.

C.

UPMC argues that the NLRB failed to consider adequately the effect of the hospital mergers on the unit determination. The NLRB responds that it considered the effect of the mergers, but found, within its discretion, that the existing unit of skilled maintenance employees at the Presbyterian complex retained a sufficiently distinct community of interest to warrant its preservation as an appropriate multi-facility unit in spite of the mergers. The NLRB's decision accords well with the Act's mandate that its unit determinations "assure to employees the fullest freedom in exercising [their] rights." 29 U.S.C. 159(b). Cf. NLRB v. Western Southern Life Insur. Co., 391 F.2d 119, 123 (3d Cir.) (NLRB's single facility presumption accords well with Act's policies), cert. denied, 393 U.S. 978 (1968). This is not a case where the NLRB has determined that one group of skilled maintenance employees within the same building or facility as another group should constitute a separate unit. Substantial evidence exists to support the particular distinction found by the NLRB between the Presbyterian and Montefiore

complexes, in light of the realities at UPMC. By determining as a result of that distinction that the skilled maintenance employees at the Presbyterian complex constitute an appropriate unit, the NLRB did not abuse its broad discretion.

The NLRB's rulemaking process and the decision in Staten Island Univ. Hosp. v. NLRB, 24 F.3d 450 (2d Cir. 1994), further convince us that multi-facility analysis was not affected by the final rule and remains relevant to the NLRB's discretion to determine what group of any of the eight types of employees listed in the Rule constitute an appropriate unit in the health care industry. In Staten Island, the court addressed the issue of whether the registered nurses at a North site facility could be treated as a separate bargaining unit from the registered nurses at a South site facility of the same hospital. The separate facilities resulted from the merger of two separate hospitals. The court stated that proper unit determination findings depend on "the degree to which employees in separate locations share a community of interests distinct from their interests as employees of the whole institution." Id. at 454. The court in Staten Island measured the degree of shared interests by the same factors utilized by the NLRB in this case. Analyzing those factors, it found that the NLRB did not abuse its discretion by determining that the groups of registered nurses at the two different sites constituted separate bargaining units.

D.

UPMC treats its skilled maintenance employees at Presbyterian and Montefiore as separate and distinct in serving their respective facilities. UPMC has no plans to integrate or merge the work of the two maintenance departments. The NLRB, accordingly, has merely applied its broad discretion to the particular circumstances of this case in finding the existing unit appropriate and in conformity with the Final Rule. UPMC has not met its heavy burden to show that the NLRB abused its discretion in that determination.

V.

In sum, we find that the NLRB did not abuse its discretion when it determined that the telecommunications workers could vote to include themselves in the existing skilled maintenance unit at the Presbyterian facility. Likewise, the NLRB's decision that the skilled maintenance employees at the Montefiore facility did not have to be included in the existing unit was not an abuse of discretion. We also find that the NLRB properly concluded that UPMC violated 8(a)(1) & (5) of the National Labor Relations Act by refusing to bargain with the Union concerning the four telecommunications employees who unanimously voted to be included in the existing skilled maintenance unit. Therefore, we will deny UPMC's petition for review and grant the NLRB's petition for enforcement.

Presbyterian University Hospital v. NLRB, Nos. 95-3048/3082

SAROKIN, Circuit Judge, dissenting.

I agree with the majority that there is substantial evidence in the record to support the NLRB's conclusion that the four telecommunications workers are appropriately considered part of the skilled maintenance workers bargaining unit. I conclude, however, that the NLRB abused its discretion by applying the community of interest analysis to determine whether the Montefiore workers should be included in the skilled maintenance workers bargaining unit.

It is my view that under the Board's own Final Rule, the Board should no longer apply the community of interest analysis in determining appropriate bargaining units in the context of acute care hospitals. Rather, in determining whether an existing bargaining unit in an acute care hospital should be expanded to include similar workers from a hospital with which it has merged, I think the Board should apply the single facility presumption -- a similar, but nonetheless distinct, standard -- and I would remand this matter to the Board for purposes of applying the standard. Accordingly, I respectfully dissent.

I.

In analyzing this case, I rely heavily upon the Board's motivation for promulgating the Final Rule, as well as the process it followed in doing so. Accordingly, I will first present a brief history of the Final Rule.

A.

In 1974, Congress passed the Health-Care Amendment to the NLRA, making non-profit hospitals -- which had been exempt from the NLRA -- subject to it. St. Margaret Memorial Hosp. v. NLRB, 991 F.2d 1146, 1148 (3d Cir. 1993) (citing Pub.L. No. 93-360, 88 Stat. 395 (1974) (codified at 29 U.S.C. 152(14), 158(d) and (g))). As a result of this change, many disputes arose regarding the appropriate bargaining units in the health care industry, and the Board and the courts of appeals struggled to resolve these disputes, often disagreeing on the appropriate test to apply to make appropriate bargaining unit determinations. See, e.g., Mercy Hospitals of Sacramento, 217 NLRB 765, 767 (1975) enf. denied on other grounds, 589 F.2d 968 (9th Cir. 1978), cert. denied, 440 U.S. 910 (1979) (relying on history of separate representation and community of interest to conclude registered nurses are entitled to separate bargaining unit); NLRB v. St. Francis Hospital of Lynwood, 601 F.2d 404 (9th Cir. 1979) (favoring a "disparity of interests" standard over a "community of interests" one); Electrical Workers IBEW Local 474 (St. Francis Hospital) v. NLRB, 814 F.2d 697 (D.C. Cir. 1987) (disapproving of the "disparity of interests" standard); seealso Collective Bargaining Units in the Healthcare Industry, 52 Fed. Reg. 25,142 (July 2, 1987) (notice of proposed rulemaking) (collecting cases and explaining changes in jurisprudence).

By the late 1980s, the Board had become very concerned with the lack of uniformity in the jurisprudence of the adjudicative arm of the Board itself, as well as in the courts of appeals, regarding the standard to be applied when determining appropriate bargaining units in the health care industry: "[T]here is no one, generally phrased test for determining

appropriate units in this industry that has met with success in the various circuit courts of appeal, and, unfortunately, parties have no clear guidance as to what units the Board, and courts will ultimately find appropriate." 52 Fed. Reg. 25,142 (notice of proposed rulemaking).

In an effort to remedy this problem, the Board engaged in notice and comment rulemaking in the late 1980s, with the goal of creating a Rule that would limit the need for "lengthy, costly litigation over the appropriate bargaining unit or units" in the health care industry. Collective-Bargaining Units in the Healthcare Industry, 53 Fed. Reg. 33901 (Sept. 1, 1988) (second notice of proposed rulemaking). The Board proceeded with the expectation that the process of notice and comment would allow it the opportunity to produce empirical evidence that it could then use to make appropriate unit determinations for acute care hospitals generally, "while not creating such undesirable results as excessive proliferation, interruption in the delivery of health care services, jurisdictional disputes, wage whipsawing, and the like." Id. In order to accomplish this task, the Board relied on past cases and information it obtained in the process of notice and comment and then applied an analysis very similar to a community of interest analysis to identify a "finite number of congenial groups displaying both a community of interests within themselves and a disparity of interests from other groups." 52 Fed. Reg. 25,146 (notice of proposed rulemaking).

> Among the factors to be considered [when determining the appropriate bargaining units for acute care hospitals] will be uniqueness of function; training, education and licensing; wages hours and working conditions; supervision; employee interaction; and factors relating to collective bargaining, such as bargaining history, matters of special concern, etc.

53 Fed. Reg. at 33905-06 (second notice of proposed rulemaking).

Following two notice and comment periods, the Board ultimately promulgated the Final Rule, 29 C.F.R. 103.30, defining eight appropriate bargaining units for acute care hospitals, see Majority Opinion, typescript at 7-8, and declaring that "[e]xcept in extraordinary circumstances and in circumstances in which there are existing non-conforming units, the [eight units] shall be appropriate units, and the onlyappropriate units, for petitions filed pursuant to section 9(c)(1)(A)(i) or 9(c)(1)(B) of the National Labor Relations Act . . . ." Id. (emphasis added).

Under the Final Rule, then, acute care hospitals are allowed eight, and only eight, bargaining units. See American Hospital Association v. NLRB, 499 U.S. 606, 608 (1991) (upholding the validity of the Final Rule). Further, the Final Rule necessarily permits only one bargaining unit of skilled maintenance workers at an acute care hospital unless non-conforming units already exist or there are extraordinary circumstances. In the case of existing non-conforming units,

however, where the Union itself seeks to open up the unit to residual skilled maintenance workers, it is required that "allunrepresented employees residual to the existing unit or units be included in an election to represent them." St. John's Hospital, 307 NLRB 767, 768 (1992) (emphasis added).

## B.

I think that the Board's motivation for promulgating the Final Rule, as well as the process it followed in doing so, demonstrates that the NLRB sought to end the case by case application of the community of interest analysis when determining the appropriate bargaining units in acute care hospitals. The Board engaged in years of notice and comment, collecting empirical evidence to develop appropriate categories of workers in acute care hospitals in order to avoid the difficulties experienced by the Board and the courts in determining the appropriate bargaining units for hospitals. It is my view that, with the promulgation of the Final Rule, the Board, and necessarily any reviewing courts, were put out of the business of applying the community of interest test to determine appropriate bargaining units in acute care hospitals.

I therefore conclude that the Board abused its discretion when it applied the community of interest test in the instant matter to determine whether the Montefiore skilled maintenance workers should be included in the same bargaining unit with the Presbyterian skilled maintenance workers. That the community of interest test was applied here to determine whether workers in similar job categories but different locations should be part of the same bargaining unit, not whether workers in different job categories should, does not alter my conclusion. The Final Rule was intended to prevent the proliferation of bargaining units in the health care industry. The Board's decision below and the majority's decision today, however, allow for the presence of multiple units of skilled maintenance workers in one acute care hospital; this is directly contrary to the Board's own Final Rule.

## II.

In rejecting the application of the community of interest test, however, I do not necessarily conclude that the Final Rule requires that the Montefiore skilled maintenance workers automatically be considered a residual non-conforming unit which should be included in the same bargaining unit as the Presbyterian skilled maintenance workers. As the majority itself correctly notes, the Final Rule "does not circumscribe or guide the NLRB's discretion to determine the facilities to be included in a unit when health care providers merge," Majority Opinion, typescript at 17, but merely enunciates eight different bargaining units by job category. Instead, I think that the appropriate question for the Board is whether the Final Rule applies to the UPMC as a whole, i.e. whether there may be eight and only eight bargaining units in the entire UPMC (only one of which may be a skilled maintenance workers unit) or whether the Final Rule applies separately to each of the five historically independent health care providers that comprise the UPMC such that the UPMC itself could ultimately have forty units (eight

bargaining units times five health care facilities).

If the Final Rule is to be applied to the UPMC as a whole, then the skilled maintenance workers bargaining unit at the Presbyterian complex is a non-conforming unit in that it does not include all of the skilled maintenance workers at UPMC. Upon opening itself up via representation elections, all residual employees, namely the skilled maintenance workers from Montefiore, must be included in the election under St. John's Hospital, 307 NLRB 767 (1992). If, however, the Final Rule applies to each of the five health care units independently, then the only residual employees to be included in the Presbyterian complex's unit of skilled maintenance workers are the telecommunications specialists.

I believe this question is answered by applying the rebuttable presumption that single-facility units are appropriate in the health care industry, explained in detail in Manor Healthcare Corp., 285 NLRB 224 (1987). This presumption is applied to determine whether employees working at different facilities operated by the same employer should be part of the same bargaining unit, or whether each facility should have its own bargaining unit.

According to Manor Healthcare, "[t]he Board has long held . . . that a single facility unit geographically separated from other facilities operated by the same employer is presumptively appropriate for the purpose of collective bargaining." Id. at 225. The rationale behind this presumption, explained in the context of retail store chains, is as follows:

> The [e]mployees in a single retail outlet
> form a homogenous, identifiable, and distinct
> group, physically separated from the
> employees in other outlets of the chain; they
> generally perform related functions under
> immediate supervision apart from employees in
> the other outlets, and thus their problems
> and grievances are peculiarly their own and
> not necessarily shared with employees in the
> other outlets.

Id. (citing Haag Drug Co., 169 NLRB 877, 877-78 (1968). An employer may rebut this presumption, however, upon a "showing of circumstances that militate against its appropriateness." Id. In order to determine whether the application of the presumption is inappropriate, the Board considers such factors as the geographic proximity of the different facilities to one another, the degree of employee interchange and transfer, the functional integration of the facilities, the administrative centralization of the facilities, common supervision, and bargaining history. West Jersey Health System, 293 NLRB 749, 751 (1989). Upon reviewing these factors, the Board is in a position to decide whether the degree of integration between or among the facilities is so great that the single-facility presumption is overcome.

The Board itself made clear in its Second Notice of Proposed Rulemaking that it considers the application of the rebuttable single-facility presumption appropriate in just the context that exists here. In discussing hospital mergers and

consolidations, the Board noted that "the proposed rule does not purport to address the issue of the appropriateness of a single facility when an employer owns a number of facilities." 53 Fed. Reg. at 33903 (second notice of proposed rulemaking). It then explained that such determinations would continue to be addressed through adjudication, and cited to Manor Healthcare Corp., in which the single-facility presumption was applied. Id. (citing Manor Healthcare, 285 NLRB 224). Furthermore, the Board and other courts have consistently applied the rebuttable single-facility presumption to cases similar to the instant one. Seee.g., Staten Island University Hospital v. NLRB, 24 F.3d 450, 456-67 (2d Cir. 1994) (applying the single-facility presumption in concluding that separate nursing bargaining units are appropriate in merged hospital context); Children's Hospital of San Francisco, 312 NLRB 920, 928 (1993) (same), enforced sub nom.California Pacific Medical Center v. NLRB,   F.3d.  , 1996 WL 333692 (9th. Cir. 1996); see also West Jersey Health System, 293 NLRB at 752 (finding the employer's multifacility hospital rebutted the single-facility presumption and required multifacility units).

　　　　The majority believes, however, that the single-facility presumption should not be applied in this case. It reasons that, because the Presbyterian complex is comprised of eight different buildings, its skilled maintenance worker unit should be thought of as a multi-facility unit, and thus the single-facility presumption does not apply. Majority Opinion, typescript at 12. I think the majority applies too literal a meaning to the word "multi-facility," appearing to believe that if employees work in different buildings of the same hospital at the same site, their bargaining unit is a multi-facility unit. As I understand it, however, the fact that one hospital is comprised of several different buildings does not mean that its workers' bargaining units are multi-facility bargaining units. If a hospital -- or any enterprise -- is comprised of several buildings on one site and has historically been an integrated unit, the single-facility presumption may apply to its bargaining units. See, e.g., Hartford Hospital and New England Health Care Employee Union, 318 NLRB No. 3 (1995), 1995 WL 468326 at *4, *16 (applying the single-facility presumption to a psychiatric hospital comprised of "several connected and unconnected buildings" and "four residential group homes . . . , two of which are located on the main campus and two of which are located in the surrounding community").

　　　　In my view, the skilled maintenance worker bargaining unit at the Presbyterian complex is a single-facility unit. While true that the Presbyterian complex is made up of eight separate buildings, these buildings comprise the same health care facility and always have; by all indications, the maintenance workers in the eight buildings comprising the Presbyterian complex always have been members of the same bargaining unit. The question for us to answer, I believe, is whether the unit should continue to be a single-facility unit in light of the merger.

III.

I recognize that some of the factors to be considered in determining whether the single-facility presumption is rebutted are similar or identical to those considered in applying the community of interest analysis. Compare NLRB v. St. Francis College, 562 F.2d 246, 249 (3d Cir. 1977) (noting that factors applied in the community of interest test include, inter alia, frequency of employee interchange, geographic proximity, integration of production processes, and history of collective bargaining) with West Jersey Health Systems, 293 NLRB at 751 (noting that factories considered in determining whether single-facility presumption has been rebutted include, inter alia, employee interchange, geographic proximity, functional integration, administrative centralization, and bargaining history). Indeed, I concede that I have found no cases in which the difference between the application of the community of interest analysis and the rebuttable single-facility presumption is discussed. I nonetheless think that the way in which the standards are applied are different and may materially affect the outcome in this case.

Most importantly, in applying the single-facility presumption the Board looks at the facilities at issue as a wholerather than focusing on the bargaining unit at issue. For example, in Manor Healthcare, the Board applied the rebuttable single-facility presumption to determine whether a union could represent the service, maintenance and technical employees at only one of the employer's three area nursing homes, or whether multi-facility bargaining units were appropriate. Manor Healthcare 285 NLRB at 227-28. In conducting its analysis, the Board did not consider only the integration of the service, maintenance and technical employees. Rather, it looked at the functional integration of the nursing homes as a whole, including "joint activities or interaction for patient care," "joint outings for area patients," transfers of patients and employees, as well as administrative centralization and geographic proximity. Id. Similarly, when the Board applied the rebuttable single-facility presumption in West Jersey Health System, it looked at the degree of employee integration for all hospital employees, including nurses, skilled maintenance workers, supply room employees and clerks in the medical records department. West Jersey Health System, 293 NLRB at 750.

By examining the facilities as a whole, the Board can arrive at a conclusion that applies to all of the bargaining units for all of the different job categories. Thus, if the Board concludes that the single-facility presumption applies to the Presbyterian complex, any other bargaining units it may have, such as nurse units or guard units, would also be single-facility units. If the Board concludes the presumption was rebutted, then there would only be one skilled maintenance workers unit, one nurses unit, and one guard unit throughout the entire UPMC.

Under the majority's reasoning, by contrast, the Presbyterian skilled maintenance workers unit could be found to lack a community of interest with the Montefiore workers, but the nurses unit could be found to share one. That would mean the UPMC management could be required to negotiate with two skilled

maintenance worker units, but only one nurses unit.  Such an outcome leads to unit proliferation that the Final Rule sought to control, and it
provides no sorely needed predictable guideline for recently merged hospitals regarding appropriate bargaining units.

IV.

Accordingly, I would deny enforcement of the Board's Order to Bargain, vacate the portion of the Board's decision concluding that the Montefiore skilled maintenance workers need not be included in the representation election, and remand for application of the single-facility presumption.  I would direct on remand that the Board allow for more fact-finding on the issue of employee interchange among all employees at all the historically independent hospitals that comprise the UPMC as there is insufficient evidence on the record regarding this point.